UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| PAMELA COLLINS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 14-281-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| DAN CUMMINS CHEVROLET- | ) | **MEMORANDUM OPINION** |
| BUICK, INC., | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

Defendant Dan Cummins Chevrolet-Buick, Inc. ("DCCB") has moved for summary judgment on Plaintiff Pamela Collins' claims for interference and retaliation in violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2615.  [Record No. 20]  The defendant contends that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law.  The defendant has also filed a supplemental motion for summary judgment, arguing that the plaintiff failed to present evidence of damages necessary to prevail on her claims.  [Record No. 33]  For the reasons discussed below, the Court will deny both motions.

## I.

This case arises out of the plaintiff's termination with DCCB in April 2014.  Collins began working at DCCB in 2009 as a receptionist.  At the time of her termination, Collins was working as an inventory coordinator, which included the responsibilities involving pre-owned inventory and customer rebate paperwork.  [Record No. 20-2, pp. 5, 13, 47–49]

- 1 -

Collins's job duties were time sensitive. DCCB had ten days to arbitrate any deficiencies with pre-owned vehicles bought at auction. Failure to file a claim within the relevant period would result in DCCB being required to keep the vehicle virtually "as is." [Record No. 20-3, pp. 10–11] Additionally, customer rebate paperwork was required to be filed with General Motors within a certain time or funds would be withheld from the dealership. [Record No. 20-2, pp. 5–7] As of April 9, 2014, Collins had not completed these responsibilities. [*Id.*] She asserts that being tardy in completing this work was a daily stressor.

On April 9, 2014, after speaking with DCCB employees Jessica Coleman and Susan Crawford, processing customer rebates was removed from Collins's assigned duties. [*Id.*, p. 7] The following morning, Jim Koehler, another employee of DCCB, met with Collins. Koehler informed her that Dusty Cummins ("Cummins"), one of DCCB's owners, wanted Collins to review inventory spreadsheets with him. [Record No. 20-2, pp. 9–10] Collins claims that this cause her to become even more upset because she had previously examined the spreadsheets with Cummins and felt that people did not trust her to do her work. [*Id.*] At that time, Collins left the dealership stating, "I can't take this anymore; I'm useless to anybody; I don't know why I'm living." [*Id.*, p. 11] DCCB employees Hannah Gross and Christy Gordon apparently responded by advising Collins that she had many reasons to live. However, these reassurances were to no avail. [*Id.*]

Collins sped away from the dealership while allegedly contemplating suicide. [*Id.*, pp. 18–19] However, she decided to seek help at the Bluegrass Medical Center with her primary care physician. Collins saw Kristie Wheeler, a physician's assistant and cousin, who

- 2 -

contacted The Ridge Behavioral Health System ("The Ridge") in Lexington, Kentucky.  [*Id.*, pp. 8, 19–20]  Collins' mother (Jeanette Falconer) and sister (Vickie Leggett) drove Collins to The Ridge.  When Collins left the Bluegrass Medical Center, Wheeler allegedly told her that either she or a member of her staff would contact DCCB to advise the company that Collins was being hospitalized.  [*Id.*, pp. 53–54]  Wheeler attempted to contact Cummins at DCCB by telephone but was placed on hold.  As a result, Wheeler did not speak with Cummins directly.  [Record No. 27-5-B, at 52:15]  Additionally, Sandy Gifford, a nurse employee by the Bluegrass Medical Center, called DCCB to speak with Cummins on three separate occasions but also was unsuccessful.  Gifford claims to have left messages with a secretary but Cummins never returned her calls.  [Record No. 27-5-B, 1:01:40, 1:03:30]

Collins received treatment at The Ridge beginning April 10, 2014.  During the first forty-eight hours of her stay, she was not allowed any outside contact and was advised not to contact her "stressors," even after the first two-day period.[1]  [Record No. 27-1, p. 85]  That same day, Cummins sent two separate text messages to Collins.  The first message (sent shortly after Collins left the office) stated: "omgosh pam I hope u r OK."  The second message (sent later that night) indicated: "Pam please let me know what's up.  I'm worried about u."  [Record No. 27-4]  Later that night, Charles Kevin Collins ("Mr. Collins"), the plaintiff's husband, called Cummins at his home and told him that the plaintiff was hospitalized.  Mr. Collins informed Cummins that further details were unavailable at the time

---

1  On April 11, 2014, Collins told her caregivers at The Ridge that she was feeling better and that she needed to be back to work on Monday, April 14, 2014.  [Record No. 20-2, p. 51]

because he had been unable to speak with his wife due to her hospitalization.  [Record No. 27-3, p. 1]

The following day (April 11, 2014), Mr. Collins again called Cummins and left a voicemail message explaining that the plaintiff was still hospitalized.  [Record No. 27-3, pp. 1–2]  Cummins did not return this phone call.  [*Id.*]  On April 12, 2014, Vickie Leggett responded to Cummins' text messages from the plaintiff's phone stating: "Hey this is Vickie, Pam's sister I have her phone so she has not received any of your messages but if you wanna call me feel free I know you probably wanna know what's going on.  My number is [XXX-XXXX]."  [Record No. 27-4]  On April 14, 2014, Jessica Coleman spoke with Leggett in response to the text messages.  During this call, Leggett informed Coleman that the plaintiff "was in the hospital" and "really, really sick."  [Record No. 27-5-B, 31:25]  However, she did not state explain the nature of Collins' medical condition.  Leggett further advised Coleman that Collins could not speak with the plaintiff and was not to contact Mr. Collins.  [Record No. 20-3, pp. 6–7]

The plaintiff was released from The Ridge on April 15, 2014, and advised that she could return to work on April 21, 2014.  The accompanying note stated: "Pamela Collins was in treatment at The Ridge Behavioral Health from 4/10/14 until 4/15/14.  Please allow [her] to return to work . . . on 4/21/14."  [Record No. 27-2]  Mr. Collins delivered the note to DCCB on April 16, 2014, where he met with Cummins, Jessica Coleman, and DCCB's Human Resources Manager.  [Record No. 27-3, p. 2]  The next day, Coleman called Collins and left a message for Collins to return the call.  Collins returned the call later that day but was unable to reach Coleman.  [Record No. 20-2, pp. 26–27]  On April 18, 2014, Collins

- 4 -

again called Coleman.  During that conversation, Collins told Coleman she would be back to work on April 21, 2014.  However, Coleman advised the plaintiff that, consistent with the employee handbook, her position was abandoned as of April 14, 2014, and that she no longer had a job with DCCB.  [*Id.*]  In a July 30, 2014, Kentucky Unemployment Insurance Commission Administrative Hearing, Dusty Cummins testified under oath that the decision to consider Collins' job abandoned did not occur until April 16, 2014, after Mr. Collins delivered the note from The Ridge.  [Record No. 27-5-A, 52:51–52:42]

At the beginning of her employment with DCCB, Collins signed an acknowledgement that she had received and understood the provisions of the company's employee handbook.  [Record No. 20-4]  Regarding unexcused absences, the handbook states that "[e]mployees are expected to personally make the effort to notify the company of any absence or tardiness" and that "[i]f an employee is absent from work for two consecutive days without informing your department manager, or Don Ruark or Dan Cummins, it will be assumed that the employee resigned and employment will be terminated as of the last day worked by the employee."  [Record No. 20-5, p. 2] Collins received a termination letter dated April 17, 2014, which read:

> As of 4/17/2014 we have not received direct communication from you regarding you position with the company.  Per the handbook you must personally contact your supervisor or one of the owners of your reason for absence within 2 days of absence.  This has not happened since your unexcused absence of duties on 4/10/14 and is considered job abandonment. Please find your final paycheck enclosed along with a copy of the handbook page and your signature accepting those terms.

[Record No. 27-6]

Collins filed this action on June 20, 2014, in the Bourbon Circuit Court, alleging claims of interference and retaliation under the FMLA.  [Record No. 1-1]  The case was removed to this Court on July 11, 2014.  [Record No. 1]  The defendant contends that summary judgment is proper with respect to Collins' claims.  [Record Nos. 20, 33]

## II.

Entry of summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002).  A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party.  That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52 (1986).

The party moving for summary judgment bears the burden of showing conclusively that no genuine issue of material fact exists.  *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008).  However, once the moving party has met its burden of production, its opponent must "'do more than simply show that there is some metaphysical doubt as to the material facts.'"  *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  Instead, the nonmoving party must present "significant probative evidence" of a genuine dispute in order to defeat the motion for summary judgment.  *Chao*, 285 F.3d at 424.  Further, a nonmoving party cannot rely upon the assertions in its pleadings.  Instead, it must come

forward with probative evidence, such as sworn affidavits, to support its claims. *Celotex*, 477 U.S. at 324. In deciding whether to grant summary judgment, the Court views all the facts and inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587.

### A. Rule 56(d)

Courts may grant summary judgment before the end of the discovery period, provided that sufficient time for discovery has passed. *Bowling v. Wal-Mart Stores, Inc.*, 233 F. App'x 460, 464–67 (6th Cir. 2007). A nonmoving party must inform the Court of its need for discovery. *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 627 (6th Cir. 2002). Rule 56(d) of the Federal Rules of Civil Procedure provides:

> If a non-movant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or take discovery; or (3) issue any other appropriate order.

FED. R. CIV. P. 56(d). Accordingly, before a summary judgment motion is decided, the nonmoving party may file an affidavit that details the discovery needed or file a motion for additional discovery. If the nonmoving party does neither, courts will "not normally address whether there was adequate time for discovery." *Plott v. General Motors Corp.*, 71 F.3d 1190, 1196 (6th Cir. 1995). The nonmovant must show that they diligently pursued discovery and explain why those efforts have not yielded the necessary facts. *Id.* In addition, the United States Court of Appeals for the Sixth Circuit has observed that "vague assertions of the need for discovery are not enough" to meet the requirements of Rule 56(d). *Summers v. Leis*, 368 F.3d 881, 887 (6th Cir. 2004). Instead, the nonmoving party "must

state with some precision the material [she] hopes to obtain with further discovery, and how exactly [she] expects those materials would help [her] in opposing summary judgment." *Id.* (internal quotation marks omitted).

Here, Collins argues that summary judgment is premature because she was not provided the opportunity to depose Dusty Cummins and Hannah Gross before the deadline for responding to the defendant's motions. [Record No. 27, pp. 8–9] Collins was provided a ten day extension to file her response, but she still asserts that she was unable to fully conduct the required discovery. [Record No. 25] In support, Collins has submitted an affidavit stating that the depositions were not taken prior to responding to the motion because the defendant requested that they be postponed due to a hearing in another matter. [Record No. 27-7] However, Collins has failed to provide sufficient detail regarding the material she hopes to obtain from these depositions or stated how those materials would help her in opposing the defendant's motion. Instead, she has simply asserted a need for the depositions to be conducted.

As described earlier, "[b]are allegations or vague assertions of the need for discovery are not enough." *Summers*, 368 F.3d at 887. Under the standard set out above, Collins has failed to meet the requirements of Rule 56(d).

### B. Objection to Unemployment Commission Testimony

Although Collins was unable to conduct depositions of certain witnesses, she has obtained the sworn testimony of Dusty Cummins, Vickie Leggett, Kristie Wheeler, and Sandy Gifford which was given during Collins' administrative hearings before the Kentucky Division of Unemployment Insurance on July 31, 2014 and August 25, 2014. [Record No.

28]  She has cited to this testimony throughout her response to DCCB's motion for summary judgment as a replacement for deposition testimony.

The defendant asserts that such testimony should not be considered pursuant to Kentucky Revised Statutes § 341.420(5).  [Record No. 31, p. 5, n.1]  Section 341.420(5) states that

> [n]o finding of fact or law, judgment, conclusion, or final order made with respect to a claim for unemployment compensation under this chapter may be conclusive or binding in any separate or subsequent action or proceeding in another forum, except proceedings under this chapter, regardless of whether the prior action was between the same or related parties or involved the same facts.

KRS § 341.420(5).  The defendant contends that testimony, even when not asserting a binding effect, should not be available for use in other civil cases because the informal procedures do not result in full litigation of the case or encourage meaningful participation in the process by the parties involved.  [Record No. 31, p. 4 n.1]; *see Jerry Sander v. Gray Television Grp., Inc.*, No. 5:08-CV-412-KSF, 2010 WL 3781639, at *4 (E.D. Ky. Aug. 13, 2010); *Berrier v. Bizer*, 57 S.W.3d 271, 281 (Ky. 2001).  DCCB also asserts that under KRS §§ 341.190 and 341.990 "the records of the [Unemployment Commission] are not open to the public for inspection, and publication or disclosure is penalized."  *Louisville Title Mortg. Co. v. Unemployment Comp. Comm'n*, 184 S.W.2d 963, 966 (Ky. Ct. App. 1944).

However, the plaintiff asserts only that use of sworn testimony from the hearing be considered by this Court.  She does not contend that any significance or binding effect be given to the Commissioner's decisions, which is the focus of KRS § 341.420(5).

Under the facts presented, the Court concludes that the sworn testimony from the unemployment hearing will not be barred from consideration in connection with the defendant's summary judgment motions.

## III.

The FMLA affords eligible employees up to twelve weeks of unpaid leave during any twelve-month period for a serious health condition that causes the employee to be unable to perform the functions of the employee's position. *See* 29 U.S.C. § 2612(a)(1). The Act is designed to protect employees. Thus, it prohibits any attempt by an employer to interfere with, restrain, or deny an employee's exercise of FMLA rights. *See* 29 U.S.C. § 2615(a)(1). The Act also prohibits an employer from discharging or discriminating against an employee for exercising her FMLA rights. *See* 29 U.S.C. § 2615(a)(2). There are two avenues for recovery under the FMLA: (1) an "entitlement" or "interference" theory and (2) a "retaliation" or "discrimination" theory. *Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004). Collins asserts claims under both theories and the defendant has moved for summary judgment with respect to each theory. [Record No. 20]

### A. FMLA Interference

A claim for FMLA interference arises under 29 U.S.C. § 2615(a)(1), which states that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" under the FMLA. To prevail on an interference claim, a plaintiff must prove the following five elements:

(1) the claimant was an "eligible employee" under 29 U.S.C. § 2611(2);

(2) the employer was an "employer" under 29 U.S.C. § 2611(4);

- 10 -

(3) the employee was entitled to leave under the FMLA;

(4) the employee gave the employer notice of her intention to take leave; and

(5) the employer denied the employee FMLA benefits to which she was entitled.

*Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003).   However, "[a]n employee returning from FMLA leave is not entitled to restoration unless [she] would have continued to be employed if [she] had not taken FMLA leave." *Hoge*, 384 F.3d at 245.

In this case, DCCB concedes that Collins was an eligible employee, that it is an employer as defined by the FMLA, and that Collins was entitled to leave under the FMLA. [Record No. 20-1, p. 9]  As a result, the Court begins its analysis with the fourth element.

### 1.  Notice to Employer

"[N]othing in the [FMLA] places a duty on an employer to affirmatively grant leave without such a request or notice by the employee." *Brohm v. JH Props. Inc.*, 149 F.3d 517, 523 (6th Cir. 1998).  In unforeseeable circumstances, such as presented here, the regulations require that an employee give notice of the need for FMLA leave "as soon as practicable under the facts and circumstances of the particular case."  29 C.F.R. § 825.303(a).  Such notice "may be given by the employee's spokesperson (e.g., spouse, adult family member, or other responsible party) if the employee is unable to do so personally." *Id.*  "An employee is not required to expressly assert [her] right to take leave under the FMLA" to satisfy the notice requirement. *Perry v. Jaguar of Troy*, 353 F.3d 510, 513 (6th Cir. 2003). Ultimately, "[t]he employee's burden is not heavy." *Wallace v. FedEx Corp.*, 764 F.3d 571, 586 (6th Cir. 2014).

The Sixth Circuit has found the critical question to be "whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to

- 11 -

take time off for a serious health condition." *Brohm*, 149 F.3d at 523 (internal quotations omitted).  The content of the notice need not be specific.  Instead, an employee must provide sufficient information to allow an employer to determine whether FMLA leave has been requested.  "Depending on the situation, such information may include that a condition renders the employee unable to perform the functions of the job; the employee has been . . . hospitalized overnight; whether the employee . . . is under the continuing care of a health care provider; . . . and the anticipated duration of the absence, if known."  29 C.F.R. § 825.303(b).  Once apprised of the situation, "the employer will be expected to obtain any additional required information through informal means.  An employee has an obligation to respond to an employer's questions designed to determine whether an absence is potentially FMLA–qualifying."  *Id.*  Failure to respond may result in denial of FMLA protection if an employer is not able to determine if the leave qualifies.  *Id.*

DCCB first argues that, under the plain language of the regulations, proper notice was not provided.  [Record No. 20-1, p. 11]  It asserts that the comments from Collins' representatives did not provide sufficient notice under the FMLA after DCCB attempted to obtain more information about the plaintiff's condition.  [Record Nos. 20-1, p. 9–19; 31, p. 6–8]  Conversely, Collins contends that the communications were sufficient to place DCCB on notice of her intent and need to take FMLA leave.

When taken in the light most favorable to the plaintiff, the record indicates that, as of April 10, 2014, Collins was visibly upset at work following a meeting with DCCB employee Jim Koehler.  While leaving work, she allegedly stated to other employees (Hannah Gross and Christy Gordon) that she could not continue to work under the conditions presented, that

- 12 -

she was useless and that she did not know why she was living.  [Record No. 20-2, p. 11]  As a result, at the time Collins left work on April 10th, DCCB was aware that something was wrong.  Collins went to the Blue Grass Medical Center and was eventually transferred to The Ridge.  Four separate phone calls were made from staff members at the Blue Grass Medical Center in an attempt to reach Cummins.  However, none of the calls was returned.  Later that night, the plaintiff's husband called Cummins at his home and informed him that the plaintiff had been hospitalized but that further information was not available.  [Record No. 27-3, p. 1]  Mr. Collins called Cummins again the next night, leaving a voicemail explaining that the plaintiff was still hospitalized.  But Cummins did not return this call.  [*Id.*, pp. 1–2]

Thereafter on April 12, 2014, Vickie Leggett, in response to Cummins' April 10 text messages, texted Cummins from the plaintiff's phone informing him that Collins had no access to her phone and that he could call her to obtain additional information at that time.  [Record No. 27-4]  Consistent with his past behavior, Cummins did not respond to the text message.  On April 14, 2014, Jessica Coleman spoke with Leggett regarding the plaintiff's condition.  During this call, Leggett informed her that the plaintiff was still hospitalized and was "really, really sick."  [Record No. 27-5-B, 31:25]

The plaintiff was released from her hospitalization on April 15, 2014.  The following day, Mr. Collins met with Cummins, Jessica Coleman, and DCCB's Human Resources Manager.  [Record No. 27-3, p. 2]  He provided them with a note from The Ridge explaining that the plaintiff was a patient from April 10, 2014 through April 15, 2014, and that she would be able to return to work on April 21, 2014.  [Record No. 27-2]  Two days later, Collins called Coleman and informed her that she would be back at work on April 21, 2014.

- 13 -

Case: 5:14-cv-00281-DCR-REW   Doc #: 47   Filed: 07/29/15   Page: 14 of 25 - Page ID#: 1118

However, at that time, the plaintiff was advised that her job had been abandoned and she had been terminated.  [Record No. 20-2, pp. 27–28]

DCCP contends that it requested further information from the plaintiff's representatives but the information provided was insufficient to allow it to conclude that Collins' absences were potentially FMLA–qualifying.  [Record No. 20-1, p. 11]  Three attempts to gather further information regarding Collins' condition were made.  First, Cummins requested more information during a conversation with Mr. Collins the night of April 10, 2014.  During that conversation, Mr. Collins informed Cummins that the plaintiff was hospitalized and that further information was unavailable.  [Record No. 27-3, p. 1] Cummins then failed to return Mr. Collins' call the following day.  Second, Cummins texted the plaintiff on April 10, 2014, requesting information about her condition.  In response, Vickie Leggett made Cummins aware that the plaintiff did not have her phone and that he could contact Leggett for more information.  However, Cummins did not respond to these text message.  [Record No. 27-4]  Finally, Jessica Coleman spoke with Leggett on April 14, 2014.   Leggett explained to Coleman that the plaintiff remained hospitalized and was "really, really sick."  [Record No. 27-5-B, 31:25]

In summary, taking the evidence in the light most favorable to the non-movant, the Court concludes that the plaintiff's representatives provided additional information when requested by the defendant.  DCCB was aware that the plaintiff was taken to the hospital on April 10 and that she remained there until April 15 through conversations with Mr. Collins and Vickie Leggett.  DCCB was advised that the plaintiff was seriously ill as a result of the matters which caused her to leave work on April 10th.  Additionally, the day following the

plaintiff's discharge from The Ridge, Mr. Collins met with DCCB employees and provided documentation regarding the time table for the plaintiff's return to work.

Although the plaintiff's exact medical condition was not revealed immediately in response to the defendant's request for further information, the plaintiff's representatives were in constant contact with the defendant, informing it that Collins remained hospitalized and was not able to return to work immediately.   Under § 825.303(b), the information provided to the employer must be "sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition."   *Brohm*, 149 F.3d at 523 (internal quotations omitted).   Here, the defendant was made aware of the time the plaintiff was hospitalized and was provided documentation of her stay at The Ridge the day following her released.   As a result, the circumstances presented create a genuine issue of material fact regarding whether sufficient notice was provided under § 825.303(b).

The defendant further argues that Collins failed to comply with DCCB's employee handbook absentee policy.   [Record No. 20-1, pp. 12–19]   Regarding compliance with an employer's absentee policy, the regulations state:

> When the need for leave is not foreseeable, an employee must comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances.   For example, an employer may require employees to call a designated number or a specific individual to request leave.   However, if an employee requires emergency medical treatment, he or she would not be required to follow the call-in procedure until his or her condition is stabilized and he or she has access to, and is able to use, a phone. . . . If an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA–protected leave may be delayed or denied.

- 15 -

29 C.F.R. § 825.303(c).  As described earlier, under DCCB's absentee policy, "[e]mployees are expected to personally[2] make the effort to notify the company of any absence or tardiness" and "[i]f an employee is absent from work for two consecutive days without informing [their] department manager, or Don Ruark or Dan Cummins, it will be assumed that the employee resigned and employment will be terminated as of the last day worked by the employee."  [Record No. 20-5, p. 2]

The defendant first asserts that no unusual circumstances are presented under § 825.303(c).  [Record No. 20-1, p. 15]  With respect to this issue, courts in this circuit have found that "the FMLA regulations associate unusual circumstances with communication issues such as the employee's inability to reach a supervisor or designated employee including inability to request FMLA leave due to physical incapacitation."  *Barger v. Jackson, Tenn. Hosp. Co., LLC*, No. 13-1311, 2015 WL 1179861, at *14 (W.D. Tenn. Mar. 13, 2015) (internal quotation marks omitted).  Here, there is evidence that the plaintiff's phone was removed for the first forty-eight hours of her stay at The Ridge (April 10 and April 11) and she was not allowed to contact anyone during that time.  [Record No. 27-1, p. 85]  The Court concludes that the facts presented here constitute unusual circumstances under the statute.  Under 29 C.F.R. § 825.303(c), the earliest the plaintiff could have been expected to comply with the employer's absentee policy was April 15, 2014.

But DCCB asserts that the communications from the plaintiff's representatives were insufficient to comply with its absentee policy.  In support, the defendant relies on case law

---

2   The defendant does not dispute that sufficient notice under the absentee policy could have been provided by the plaintiff's representatives.  [Record No. 31, p. 3]

concerning substantially different circumstances.   For example, in *Dunaway*, a nurse assistant was hospitalized with a sinus infection and failed to report to work for three days. *Dunaway v. Kindred Nursing Ctrs. Ltd. P'ship*, No. 3:13-CV-684-H, 2014 WL 5092280 (W.D. Ky. Oct. 9, 2014).   There, the defendant had an absentee policy that required employees to contact a specific person when requesting leave and that terminated employees after three consecutive "no call, no show" absences.   *Id.* at *1.   The Court upheld the defendant's policy and found that no contact was made with the required person until nearly two weeks after her termination.   *Id.* at *2 (citing *Strouder v. Dana Light Axle Mfg., LLC*, 725 F.3d 608 (6th Cir. 2013) (finding that the FMLA regulations permit employers to enforce usual and customary notice and procedural requirements for requesting leave)). *Dunaway* is distinguishable from the facts of this case.   In the present case, it is not disputed that the plaintiff's representatives contacted the correct person under the defendant's absentee policy on multiple occasions during her hospitalization, keeping the defendant informed as to her status.

DCCB also asserts that, even if unusual circumstances existed, simply stating that Collins was in the hospital did not provide adequate notice, citing *Gay v. Gilman Paper Co.*, 125 F.3d 1432 (11th Cir. 1997).   [Record No. 20-1, p. 16]   In *Gay*, the plaintiff was admitted to a psychiatric hospital as the result of a nervous breakdown.   Two days after her hospitalization, the plaintiff's husband called her supervisor and provided false information regarding where she had been hospitalized and her condition.   Her husband merely stated that she was in the hospital for "tests."   *Id.* at 1436.   No additional information was provided. The Court found that the plaintiff's claim for FMLA interference could not survive summary

judgment because the severity of the "medical condition [was] deliberately withheld and false information [was] given." *Id.* Here, however, there is no indication that false information regarding Collins' hospitalization was provided to the defendant. Further, the plaintiff's representatives continually contacted the defendant, providing sufficient information to determine that the plaintiff was very sick, in the hospital for five days, and unable to directly communicate with anyone.

As described above, DCCB's absentee policy requires communication with an employee's department manager and states that an absence from work for two consecutive days without informing the manager will result in an assumed resignation and termination of employment. [Record No. 20-5, p. 2] However, the facts taken in the light most favorable to the plaintiff show that her representatives made numerous attempts to contact Cummins and spoke directly with him and Coleman during the hospitalization. The plaintiff's representatives explained that Collins remained hospitalized through April 15, and that she was not able to return to work at that time. Thus, a genuine issue of material fact has been presented regarding whether the plaintiff complied with the defendant's absentee policy under § 825.303(c) as of April 15, 2014.

Further, there is a genuine issue of material fact regarding whether the note from The Ridge provided adequate notice under the absentee policy. As described earlier, Mr. Collins provided DCCB with a note on April 16, 2014, stating that "Pamela Collins was in treatment at The Ridge Behavioral Health from 4/10/14 until 4/15/14. Please allow [her] to return to work . . . on 4/21/14." [Record No. 27-2] This confirms the plaintiff's whereabouts during

- 18 -

the time she was absent from work and it provides a specific date concerning when she could be expected to return.

DCCB asserts that this information cannot fulfill the notice requirement because an employer is not obligated to grant FMLA leave when there is no notice of the need for leave until after termination of employment.  [Record No. 20-1, p. 19 (citing *Brohm v. JH Props., Inc.*, 947 F. Supp. 299, 302 (W.D. Ky. 1996)]  However, the record contains conflicting evidence regarding when the decision to consider Collins' job abandoned occurred.  The defendant asserts that, pursuant to the absentee policy, the plaintiff was deemed to have abandoned her job on April 14, 2014, as stated in the deposition of Jessica Coleman. [Record No. 20-3, pp. 8–9]  However, Dusty Cummins testified that the decision to treat the plaintiff's job absence as abandonment did not occur until after receipt of the note from The Ridge on April 16, 2014.  [Record No. 27-5-A, 52:51–52:42]  As a result, a jury could find that the defendant failed to abide by its absentee policy.

The defendant does not contend that the note failed to provide sufficient notice under the absentee policy.  Further, it was not until April 17, 2014, that the defendant sent the letter to Collins informing her that her job had been considered abandoned and that she had been terminated as of her last day of work, April 10, 2014.  [Record No. 27-6]

For the foregoing reasons, genuine issues of material fact exist regarding whether proper FMLA notice occurred.[3]

### 2. Legitimate Non-Discriminatory Reason

---

3  The defendant has not stipulated to the final element of an FMLA interference claim: "the employer denied the employee FMLA benefits to which she is entitled."  However, no evidence has been provided that Collins was given benefits under the FMLA.

- 19 -

An employer's intent is relevant to claims of interference under the FMLA. "[I]nterference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct." *Grace v. USCAR*, 521 F.3d 655, 670 (6th Cir. 2008) (internal quotation marks omitted). If the defendant proffers a legitimate justification, the plaintiff may seek to rebut it by a preponderance of the evidence. *Arban v. W. Publ'g Corp.*, 345 F.3d 390, 401 (6th Cir. 2003). The plaintiff can "refute the legitimate, nondiscriminatory reason that an employer offers to justify an adverse employment action by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Wexler v. White's Fine Furniture*, 317 F.3d 564, 576 (6th Cir. 2003) (internal quotation marks omitted).

DCCB asserts that, even if the plaintiff is able to demonstrate a prima facie case of FMLA interference, it has proffered a legitimate, non-discriminatory reason for its action. [Record No. 20-1, pp. 19–20] Specifically, it asserts that under DCCB's absentee policy, the plaintiff's job was considered abandoned after two days without direct communications with her supervisor. [*Id.*] However, as demonstrated above, a genuine issue of material fact exists regarding whether sufficient notice was provided by the plaintiff's representatives of her intent to take FMLA leave. Further, there is a genuine issue of material fact regarding when the defendant considered the plaintiff's job abandoned. Whether the decision to find Collins' job abandoned occurred before or after the defendant received the note from The Ridge documenting the plaintiff's whereabouts from April 10 to April 15 could allow a jury

to question whether her termination was related to the defendant's absentee policy.  Thus, summary judgment is not proper regarding the plaintiff's claim of FMLA interference.

### B.  FMLA Retaliation

Retaliation claims under the FMLA are analyzed pursuant to the burden-shifting test set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), and modified in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981).  At the first stage of the *McDonnell-Douglas* test, the plaintiff must demonstrate a prima facie case. *Id.*  If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to provide a legitimate, non-discriminatory reason for the plaintiff's termination.  *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001).  If the defendant demonstrates such a reason, the plaintiff must establish that the non-discriminatory reason is pretext.  *Id.*  The plaintiff can show this by demonstrating that the employer's proffered reasons for discharge: (1) "had no basis in fact," (2) "did not actually motivate the employer's actions," or (3) "were insufficient to motivate the employer's action."  *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009).

A prima facie case of FMLA retaliation requires a showing that the plaintiff: (1) "engaged in a statutorily protected activity" (*e.g.*, by taking FMLA leave to which she was entitled); (2) "suffered an adverse employment action"; and (3) "there was a causal connection between the adverse employment action and the protected activity."  *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007) (citing *Skrjanc*, 272 F.3d at 314).

DCCB makes the same arguments as those outlined above.  It asserts that a prima facie case cannot be established because the evidence demonstrates that Collins abandoned

her job under the employee handbook as of April 14, 2014.  [Record No. 20-1, pp. 22–23]  Thus, it claims that because the plaintiff had not requested leave at the time of her job abandonment, no causal connection between the adverse employment action and her exercise of FMLA leave can be proven.  Further, DCCB contends that even if a prima facie case can be demonstrated, it has provided a legitimate, non-discriminatory reason for terminating the plaintiff.  [*Id.*, p. 23]

The Court has concluded that there is a genuine issue of material fact regarding whether the plaintiff engaged in a statutorily-protected activity by taking FMLA leave.  Further, the defendant does not argue that the plaintiff did not suffer an adverse employment action.  Therefore, the main question is whether there was a causal connection between Collins' taking FMLA leave and her termination.  The defendant contends that the reason for Collins' termination was her failure to abide by the absentee policy.  But as described above, genuine issues of material fact exist regarding whether the plaintiff's representatives provided sufficient information about her health condition and whether DCCB waited to consider the plaintiff's job abandoned until after receiving the note from The Ridge.  Thus, a reasonable jury could find that the plaintiff has demonstrated a prima facie case of FMLA retaliation.

DCCB further asserts that, even if a prima facie case of retaliation exists, it has provided a legitimate, non-discriminatory reason for Collins' termination under the absentee policy.  [Record No. 20-1, pp. 23–24]  However, as outlined above, there is a genuine issue of material fact concerning whether adequate notice of intent to take FMLA leave was provided and when DCCB considered Collins' job abandoned.  As a result, a reasonable jury

could find that the decision to terminate the plaintiff's employment was not the result of the defendant's asserted reason.  Therefore, the defendant is not entitled to summary judgment on the plaintiff's retaliation claim.

### C.  Supplemental Summary Judgment

The defendant has also filed a supplemental motion for summary judgment, arguing that the plaintiff failed to provide the defendant with evidence regarding the amount of damages claimed when responding to interrogatories.  [Record No. 33]  Specifically, DCCB asserts that because the plaintiff did not disclose the specific dollar amount of damages prior to the end of discovery, summary judgment is proper.  [Record Nos. 33-1, 43]  However, the defendant has provided no case law supporting that the failure to provide specific dollar amounts of damages over four months prior to the scheduled trial date is grounds for summary judgment.  Instead, DCCB relies solely upon case law governing motions to compel answers to interrogatories.  [*See e.g.*, Record No. 33-1, p. 5–6 (citing *Cont'l Ill. Nat'l Bank & Trust Co. of Chi. v. Caton*, 136 F.R.D. 682 (D. Kan. 1991)]

Prior to the defendant's motion, the plaintiff's initial disclosures revealed the categories of damages sought, including back pay, front pay, liquidated damages, reasonable attorneys' fees and costs, and any other amount of damages deemed appropriate.  [Record No. 40-2]  Further, Collins had already provided an overview of specific dollar amounts relating to the general damages asserted.  In her January 8, 2015 deposition, responding to a question regarding the amount of damages being claimed, Collins stated:

> I was working 60 hours a week.  I was making $15 an hour at Dan Cummins, and I was making $9 an hour at Bed, Bath and Beyond.  So I've lost pretty much $600 a week in wages.  I had to pull out my 401(k).  I've lost all of that money and the penalty.  I have – my car was repossessed.  My mom had to

take a loan out to help me get that back.  There was – I feel like I have lost that $15,000 life insurance that they just gave to the employees.  My utilities have been turned off and on.  My kids have been without stuff, without water, without heat, without – some days we went without food.  There was a cancer policy and a life insurance policy that I took out in 2009 when I started with Allstate, because they have different companies come in and you can get stuff beyond what they offer – what the company offers, and, then, you have a tax – automatic withdrawn from your account.  I had been planning on a $25,000 life insurance policy with a $10,000 child rider since 2009.

[Record No. 27-1, pp. 86–87]

Finally, the plaintiff has since provided the defendant with the specific dollar amounts of damages requested.  [Record No. 40-1, pp. 6–8]  Thus, the plaintiff sufficiently provided evidence of the damages sought, and the supplemental motion for summary judgment will be denied.[4]

**IV.**

For the foregoing reasons, it is hereby

**ORDERED** as follows:

1.      Defendant's motion for summary judgment [Record No. 20] is **DENIED**.

2.      Defendant's supplemental motion for summary judgment [Record No. 33] is **DENIED**.

---

4  The defendant's reply to the Supplemental Motion for Summary Judgment invites the Court to "deny Plaintiff's attempt to modify the scheduling order and add specific damages information after the close of discovery" under Federal Rule of Civil Procedure 16(f)(1).  [Record No. 43, p. 4]  Rule 16(f) pertains to the ability of the Court to issue sanctions for failure to obey a scheduling order.  Under the circumstances presented, the Court does not believe that such action is warranted.

This 29th day of July, 2015.



Signed By:

*Danny C. Reeves* DCR

**United States District Judge**